IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**ANGELA N.,**

        **Plaintiff,**

v.                                            Case No.: 3:24-cv-00540

**FRANK BISIGNANO,**
**Commissioner of the Social**
**Security Administration,**

        **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief and the Commissioner's Brief in Support of Defendant's Decision, which both seek judgment on the pleadings. (ECF Nos. 10, 11).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings, (ECF No. 10), be **DENIED**; the Commissioner's request for judgment on the pleadings, (ECF No. 11), be **GRANTED**; the Commissioner's

1

decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

I. **Procedural History**

In November 2020, Plaintiff protectively applied for DIB, alleging disability beginning on December 31, 2019, due to degenerative disc disease, herniated discs, bulging discs, spinal stenosis of the lumbar region with neurogenic claudication, chronic pain, hiatal hernia, dysphasia, GERD, chronic laryngitis, esophagitis, headaches, and blurred vision. (Tr. 103, 120, 255). The state agency denied the claim initially and on reconsideration (Tr. 136, 149). Plaintiff requested a hearing before the ALJ, and the ALJ thereafter denied Plaintiff's application. (Tr. 8-29, 37-74, 160). Plaintiff requested review of the ALJ's decision, and the Appeals Council determined that there was no basis to grant the request. (Tr. 1-6, 250-51). Thus, the ALJ's decision became the final decision of the Commissioner.

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 6). Claimant filed a Brief, (ECF No. 10), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 11), both of which seek judgment on the pleadings. The time period within which Claimant could reply to the Commissioner's response has expired. Consequently, the matter is fully briefed and ready for resolution.

II. **Claimant's Background**

Claimant was 43 years old on his alleged disability onset date and 47 years old on his date last insured. (Tr. at 21). She has at least a high school education, communicates in English, and previously worked as a registered nurse and delivery driver. (Tr. at 21).

### III.   Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case

of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is

4

deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2023. (Tr. at 13, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since her alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: asthma, degenerative disc disease of the cervical spine and lumbar spine, status/post discectomy of the lumbar spine, scoliosis, and bilateral carpal tunnel syndrome. (*Id.*, Finding No. 3). The ALJ also considered Claimant's irritable bowel syndrome, gastroesophageal reflux disease, migraines, vision loss, esophagitis and hiatal hernia, depression, and anxiety, but the ALJ found that the impairments were not severe. (Tr. at 13-16).

Under the third inquiry, the ALJ concluded that Claimant did not have an

5

impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 16-17, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to lift and carry 50 pounds occasionally, 20 pounds frequently. During an eight-hour workday, she can sit a total of eight hours (five hours at a time); can stand a total of three hours (two hours at a time); and can walk a total of two hours (one hour at a time). She can occasionally reach overhead with both upper extremities. She can frequently reach in all other directions with both upper extremities. She can frequently handle, finger, feel, and push/pull with both hands. She can frequently operate foot controls with both feet. She can never climb ladders or scaffolds. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never be exposed to unprotected heights. She can frequently operate a motor vehicle. She can frequently be exposed to moving mechanical parts; humidity and wetness; irritants such as fumes, dust, odors, gases, and poorly ventilated areas; extreme cold; extreme heat; and vibrations.

(Tr. at 17-21, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform her past relevant work. (Tr. at 21, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with her RFC to determine her ability to engage in other substantial gainful activity. (Tr. at 21-23, Findings 7 through 10). The ALJ considered that (1) Claimant was defined as a younger individual age 18 to 49 on the alleged disability onset date; (2) Claimant had at least a high school education; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of her transferable job skills. (Tr. at 21-22, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as an order picker, production helper, or warehouse worker at the light

level of exertion. (Tr. at 22-23, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 23, Finding No. 11).

### IV. Claimant's Challenges to the Commissioner's Decision

Claimant does not assert any specific challenges to the Commissioner's decision. (ECF No. 10). She simply indicates that she does not believe that her application has been given fair consideration based on her age and education instead of her physical/health disabilities. (ECF No. 10 at 1). She provides a summary of the medical evidence. (ECF Nos. 10 at 2-3, 10-1 at 1-3). In response, the Commissioner argues that the ALJ's decision should be affirmed because it is supported by substantial evidence and was reached through the application of the correct legal standards. (ECF No. 11).

### V. Relevant Evidence

The undersigned thoroughly examined the entire record. Claimant only mentions physical impairments in her brief. (ECF Nos. 10, 10-1). Thus, the below summary focuses on pertinent evidence related to Claimant's physical impairments.

Claimant's March 2020 lumbar spine MRI showed interval resection of the disc herniation at L4-5 with significantly improved central canal stenosis (Tr. 386). In April 2020, her nerve conduction study was positive for left-sided S1 myotome radiculopathy with chronic denervation changes. (Tr. 459). Claimant underwent physical therapy treatment for her low back pain. (Tr. 390). Her physical therapist determined in December 2019 that Claimant had a mildly antalgic gait, but she did not require an assistive device. (Tr. 391). A L4 to S1 decompression was performed on Claimant's spine in September 2020, and she ambulated independently at discharge (Tr. 427).

By December 2020, Claimant was doing "fairly well," and her lower extremity

7

symptoms had improved (Tr. 471). Claimant's treating neurologist's examination findings showed intact sensation to light touch, narrow-based-to-normal gait, normal tone, and 4/5-to-normal strength ratings in her extremities (Tr. 834, 837, 840, 844). An August 2021 lumbar MRI showed multi-level facet joint arthropathy and degenerative disc disease, stable mild-to-moderate acquired central canal stenosis at L3 to L4, and post-operative changes at L4 to L5; improved midline disc protrusion at L5 to S1; and persistent moderate left foraminal stenosis at the L5 to S1 level. (Tr. 563). A CR spine scoliosis study showed scoliosis of the thoracolumbar region and degenerative disc disease and facet arthropathy at L3 to S1. (Tr. 559). Plaintiff's treatment consisted of lower back injections, physical therapy, pain medication, and muscle relaxers. (Tr. 623-24, 659-61, 666-70, 687, 690, 761, 833, 843). Her examinations still showed normal gait with no use of an assistive device. (Tr. 672, 677).

Claimant also had a normal cervical MRI in May 2019 and a June 2021 cervical MRI that showed only mild multi-level degenerative changes, along with a nerve conduction study of the upper extremities in September 2021. (Tr. 554, 597, 609). In September 2022, a neurologist diagnosed Plaintiff with cervical spine osteoarthritis, cervical radiculopathy, cervical stenosis of the spinal canal, and right carpal tunnel syndrome (Tr. 711). However, examination findings were minimal, showing only positive findings of 4+/5 thumb range of motion and reduced pinprick in the distribution of the right median nerve in her hand. (Tr. 711). Claimant was prescribed a wrist brace to wear at night (Tr. 712). Subsequent nerve conduction studies in November 2022 were positive for moderately severe right and only mild left carpal tunnel syndrome and superimposed chronic bilateral C5 to C8 radiculopathy. (Tr. 810).

As for Claimant's irritable bowel syndrome (IBS), Claimant sought treatment in

January 2022. She was diagnosed with IBS and prescribed medication, but it was noted that she had a normal colonoscopy. (Tr. 881-82). Claimant was diagnosed with intractable migraine headache with aura but without status migrainosus. (Tr. 987). Her brain MRI showed a small pocket of CSF fluid overlying the right anterior frontal lobe, possibly reflecting a small arachnoid cyst. (Tr. 979). However, neurologic examination findings were largely normal. (Tr. 428, 450, 472, 501, 565, 587, 672, 677, 683, 686, 690, 711, 760); *Cf.* (Tr. 434, 447, 571, 584, 711).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree

9

with such decision." *Blalock*, 483 F.2d at 775.

Claimant brought this action *pro se*, which requires the Court to liberally construe her pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. However, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A Court may not construct the plaintiff's legal arguments for the plaintiff. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## VII. Discussion

Claimant does not assert any specific errors in the ALJ's decision. She thinks her "case has not been treated fairly and has been based on [her] age and education instead of [her] physical/health disabilities." (ECF No. 10 at 1). She goes on to list the medical evidence, which, in her view, demonstrates that she is disabled. However, the ALJ considered all of that evidence and applied the correct law in reaching the decision that Claimant is not disabled.

The undersigned liberally construes Claimant's Brief as seeking judgment on the pleadings. However, while the undersigned is sympathetic to Claimant's plight, Claimant does not articulate any specific errors in the Commissioner's decision for the Court to evaluate. The Court cannot substitute its judgment for the Social Security Administration.

10

It can only review the record to determine whether the Commissioner applied the correct law and whether the decision is supported by more than a scintilla of evidence. In this case, the ALJ thoroughly considered all of the impairments, alleged symptoms, and records that Claimant mentioned in her brief. The ALJ properly applied the sequential evaluation process and provided well-reasoned analysis based on the overall record. The ALJ's findings are supported by substantial evidence. Claimant does not allege any error that would require the Court to remand the case for further proceedings. *See, e.g., Priester v. Comm'r of Soc. Sec. Admin.,* No. 820CV03231DCCJDA, 2022 WL 1057187, at *9 (D.S.C. Jan. 7, 2022), *report and recommendation adopted,* 2022 WL 884239 (D.S.C. Mar. 25, 2022); *Flor V. D. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-22-3200, 2024 WL 1214287, at *3 (D. Md. Mar. 21, 2024); *Harry F. v. O'Malley*, No. CV 23-2320-CDA, 2024 WL 3378224, at *2 (D. Md. July 11, 2024); *James S. v. Colvin*, No. 2:24-CV-00157, 2025 WL 398647, at *6 (S.D.W. Va. Jan. 13, 2025), *report and recommendation adopted sub nom. James S. v. King,* 2025 WL 394981 (S.D.W. Va. Feb. 4, 2025).

## VIII. Proposal and Recommendations

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 10); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 11); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Reeder.

      The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

      **FILED: July 17, 2025**



_____
Joseph K. Reeder
United States Magistrate Judge